**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DAVID J. HOPKINS,**<br>*Plaintiff,*<br>v.<br>**GDI INTEGRATED FACILITY SERVICES INC.**<br>and<br>**CBRE, INC.**<br>*Defendants.* | CIVIL ACTION NO.<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT AND JURY DEMAND**

Plaintiff David J. Hopkins, through his undersigned counsel, The Lacy Employment Law Firm, LLC, brings this Complaint against Defendants GDI Integrated Facility Services Inc. and CBRE, Inc., and alleges as follows:

## I. PRELIMINARY STATEMENT

1. Mr. Hopkins brings this action for racial harassment, retaliation, and constructive discharge under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981").

2. Mr. Hopkins, a Black man, managed GDI's janitorial operations at a CBRE-managed office building in Philadelphia. CBRE's General Manager of Property Management, Jeffrey Engel, called Mr. Hopkins and his Black staff "nigger," "boy," "porch monkey," and "cushi," threatened to get rid of Mr. Hopkins, and spat at him.

3. Mr. Hopkins complained to at least six GDI managers and executives and to CBRE's governance investigator. GDI's President answered that Engel had been GDI

leadership's friend for more than ten years, that Engel "knows people in high places," that GDI needed to keep the account, and that Mr. Hopkins should not "take it personal."

4. Defendants removed the victim instead of the harasser. After CBRE investigated Mr. Hopkins's complaints, GDI met privately with Engel, then pulled Mr. Hopkins off the CBRE account and moved him from day shift to a 4:30 p.m. to 12:30 a.m. shift, effective the next business day. Mr. Hopkins resigned on January 2, 2026. He seeks economic, compensatory, and punitive damages, injunctive relief, attorneys' fees, and costs.

## II. PARTIES

5. Plaintiff David J. Hopkins is an adult individual who resides at 1920 Frontage Road, Apt. 1801, Cherry Hill, New Jersey 08034.

6. Mr. Hopkins is Black/African American.

7. Defendant GDI Integrated Facility Services Inc. ("GDI") is a commercial facility services company that provides janitorial services to property owners and managers. GDI maintains its regional headquarters at 780 Fifth Avenue, Suite 115, King of Prussia, Pennsylvania 19406.

8. Upon information and belief, GDI employs more than 1,000 employees.

9. Defendant CBRE, Inc. ("CBRE") is a commercial real estate services company that manages the office building at 50 S. 16th Street, Suite 3000 Philadelphia, PA 19102.

10. Upon information and belief, CBRE employs more than 5,000 employees.

11. At all relevant times, CBRE employed Jeffrey Engel as General Manager of Property Management at the Philadelphia property. Engel acted within the scope of his employment and as CBRE's agent.

12. At all relevant times, each Defendant acted through its agents, servants, and employees, who acted within the scope of their agency and employment.

13. At all relevant times, GDI and CBRE were each an "employer" within the meaning of 42 U.S.C. § 2000e(b), and jointly employed Mr. Hopkins.

## III. JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(4) because Mr. Hopkins's claims arise under Title VII and Section 1981.

15. This Court has personal jurisdiction over Defendants because each conducts business in this District, GDI maintains its regional headquarters in this District, and the conduct alleged occurred in this District.

16. Venue lies in this District under 28 U.S.C. § 1391(b)(1) and (2) and 42 U.S.C. § 2000e-5(f)(3). Defendants committed the unlawful employment practices in Philadelphia, GDI directed Mr. Hopkins's employment from King of Prussia, and, upon information and belief, GDI maintains the relevant employment records in this District.

## IV. ADMINISTRATIVE EXHAUSTION

17. On or about March 23, 2026, Mr. Hopkins timely filed two Charges of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") naming both GDI and CBRE as respondents. The charges alleged race and color discrimination, racial harassment, retaliation, and constructive discharge. The two charges were dual-filed with the Pennsylvania Human Relations Commission contemporaneously.

18. The EEOC docketed that single charge under two numbers: Charge No. 530-2026-05987 against GDI and Charge No. 530-2026-05988 against CBRE.

19. On October 8, 2026, the EEOC issued a Notice of Right to Sue on each charge number. True and correct copies are attached as **Exhibit A** (No. 530-2026-05987, GDI) and **Exhibit B** (No. 530-2026-05988, CBRE).

20. Mr. Hopkins files this Complaint within 90 days of his receipt of both Notices.

21. Mr. Hopkins has exhausted his administrative remedies under Title VII. Section 1981 imposes no exhaustion requirement.

## V. FACTUAL ALLEGATIONS

### A. GDI Hires Mr. Hopkins, and CBRE Directs His Daily Work

22. Upon information and belief, GDI provides janitorial services at CBRE's Philadelphia location under a contract with CBRE.

23. On or about April 27, 2025, GDI Senior Regional Vice President Bradley Reep hired Mr. Hopkins as Account Manager at an annual salary of $70,000.

24. GDI assigned Mr. Hopkins to CBRE on day shift.

25. As Account Manager, Mr. Hopkins oversaw daily janitorial operations at the CBRE property, including scheduling, assigning duties to, and supervising the janitorial staff.

26. Nearly all of the janitorial staff Mr. Hopkins supervised were Black. The staff belonged to 32BJ SEIU.

27. Mr. Hopkins reported to GDI District Manager Carla Harris, his direct supervisor, and to GDI Director of Operations Felipe Rodriguez.

28. Mr. Hopkins also reported to Engel. Engel held janitorial operations meetings with Mr. Hopkins and CBRE's Assistant Property Manager, received Mr. Hopkins's weekly written reports, set the scope of work, and dictated how and when Mr. Hopkins's staff performed their duties.

29. Engel controlled the work plan for the janitorial operation. He discarded Mr. Hopkins's action plan and required Mr. Hopkins to follow Engel's own plan.

30. Upon information and belief, CBRE had authority under its contract with GDI to demand the removal of GDI personnel from the CBRE Philadelphia property, and Engel invoked or threatened to invoke that authority against Mr. Hopkins.

31. Mr. Hopkins performed his work at CBRE's facility, under CBRE's day-to-day direction, and subject to CBRE's standards.

32. Because CBRE controlled the manner and means of Mr. Hopkins's work and his continued assignment to the Philadelphia property, CBRE jointly employed Mr. Hopkins with GDI.

**B. Engel Targets Mr. Hopkins and His Black Staff**

33. On or about May 12, 2025, at Mr. Hopkins's first janitorial operations meeting, Mr. Hopkins handed Engel a written action plan to improve service at the CBRE Philadelphia property. Engel ripped it up without reading it and threw it in the trash.

34. Mr. Hopkins reported the incident to Harris. Harris told him that Engel was "just like that" and that Mr. Hopkins had to learn to work through it.

35. In late May 2025, Reep visited the Philadelphia property. When Mr. Hopkins described Engel's conduct, Reep said he also had problems with Engel and told Mr. Hopkins to document everything.

36. In or about June 2025, Engel confronted Mr. Hopkins's staff while they performed their assigned work, berated them, told Mr. Hopkins to stay in his lane, and referred to the Black workers as Mr. Hopkins's "boys."

37. Mr. Hopkins objected that his staff were grown men and asked Engel to move the conversation inside. Engel became combative.

38. "Boy," directed at Black men, is a racial insult with a long history of denying Black men their adulthood and dignity.

39. Mr. Hopkins called Harris, who came to the site but took no action, telling him, in substance, "you know how he is." Harris instructed Mr. Hopkins' staff to start a petition against Engel but once the complaint was submitted, Harris stated "she knows nothing" and proceeded to call Mr. Hopkins' staff "kitchen bitches" to two of his staff members, Raymond Wagstaff and Dennis Rosser.

40. Mr. Hopkins then reported the harassment to Reep. At Reep's direction, he documented the incidents in writing and emailed them to Reep, copying Harris.

**C. GDI Leadership Tells Mr. Hopkins Not to "Take It Personal"**

41. On July 28, 2025, GDI leadership, including President Peter Criville and Director of Client Relations Kathleen Albertson, met at the Philadelphia property with Mr. Hopkins and the staff who reported to him. Denise Stroman, a 32BJ SEIU representative, attended.

42. GDI leadership opened the meeting by acknowledging the complaints and asking for feedback about conditions at the Philadelphia property.

43. Mr. Hopkins and his staff described Engel's racial harassment. Mr. Hopkins reported that Engel had called them "boy" and "nigger."

44. GDI leadership, including Kathleen Albertson, responded in substance, that the CBRE Philadelphia property was Engel's property and he could do what he wanted; that Engel had been their friend for more than ten years; that the staff were exaggerating; that Engel "knows

people in high places" and was not going anywhere; and that GDI needed to keep the CBRE account.

45. On July 28, 2025, Peter Criville agreed with Albertson's remarks on Engel and stated "we know he is a jerk off and he sometimes talks to us recklessly but we just ignore it and that's what we are telling you guys to do because he isn't going anywhere. We have a friendship that stands for over 10 years".

46. When Mr. Hopkins asked whether Engel could call them "boy" and "nigger" without consequence, President Criville acknowledged that Engel was a "jerk-off" but told Mr. Hopkins not to "take it personal," to work through it, and that it would get better.

47. Albertson repeated that Engel knew everybody in high places and that GDI had to keep the account.

48. Mr. Hopkins asked what GDI would do about Engel. GDI leadership did not answer and offered no remedial plan.

49. Upon information and belief, GDI leaders maintained a personal friendship with Engel, including taking him out for his birthday and drinking with him at the Philadelphia property.

50. Upon information and belief, before Mr. Hopkins arrived, Engel had clashed with both Harris and Albertson, and each had been removed from or stopped working at the CBRE Philadelphia property. GDI therefore knew of Engel's history of mistreating GDI personnel.

**D. Engel's Racial Harassment Escalates**

51. After the July 28 meeting, Engel's harassment intensified. Upon information and belief, GDI leadership relayed the staff's complaints to Engel.

52. Engel called Mr. Hopkins and his Black staff “boy” with increasing frequency and also called them “nigger,” “porch monkey,” and “cushi,” a slur used to demean Black people.

53. On one occasion, Engel called a member of Mr. Hopkins’s staff a “stupid motherfucker” while the employee operated a Kubota utility vehicle. When Mr. Hopkins objected, Engel told him not to tell Engel what to do. Mr. Hopkins reported the incident to Harris, who told him to calm down.

54. In or about September 2025, Engel called Mr. Hopkins “nigger” to his face. Mr. Hopkins reported it to Harris, who told him to “just ignore it” and that he “needed time to cool off.”

55. Three or four days later, while Mr. Hopkins walked the CBRE Philadelphia property with GDI team leader Derrick Jones and GDI employee Raymond Wagstaff, Engel confronted Mr. Hopkins and told him, in substance, “I’m getting rid of you. I promise you I’m gonna get rid of you.”

56. When Mr. Hopkins asked Engel to show him exactly how he wanted the work done, Engel muttered slurs under his breath. Mr. Hopkins told Engel it would be the last time Engel called him that word. Engel called Mr. Hopkins “cushi” and said, in substance, “I’m gonna show you who’s tripping, nigger. I got you.”

57. Engel then called Rodriguez. Rodriguez called Mr. Hopkins, said Engel was unhappy and GDI could lose the contract at any time, and refused to hear that Harris had just walked the site and found no deficiencies.

58. Engel’s promise to “get rid of” Mr. Hopkins was a threat to use CBRE’s control over the account to remove him.

**E. Engel Spits at Mr. Hopkins**

59. In or about late October or early November 2025, near 12th, Market, and Clover Streets by the Philadelphia property, Engel summoned Mr. Hopkins to address a site condition. Mr. Hopkins directed his staff to address it immediately.

60. Engel then spat toward Mr. Hopkins's face. Mr. Hopkins stepped back and avoided being struck.

61. GDI employees Derrick Jones, Raymond Wagstaff, and Donavan Morris witnessed the incident. Jones and Wagstaff pulled Mr. Hopkins away to de-escalate the confrontation.

62. GDI knew of the spitting incident and took no corrective action.

**F.Mr. Hopkins Complains to GDI and CBRE, and Neither Stops Engel**

63. Throughout his employment, Mr. Hopkins complained about Engel's racial harassment to Harris; Reep; Kevin Powell, the Senior Vice President who replaced Reep; Rodriguez; Griffin McNeese, Director of Labor Relations; and Albertson.

64. GDI did not investigate Engel's conduct, ask CBRE to remove or restrict Engel, separate Engel from Mr. Hopkins and his staff, or take any other corrective action within its control.

65. Mr. Hopkins also complained to CBRE. CBRE governance investigator Marina Ravelo interviewed Mr. Hopkins's staff and then Mr. Hopkins. Ravelo told Mr. Hopkins that Engel's conduct was unacceptable and inconsistent with CBRE's ethics, and assured him that CBRE would address any retaliation.

66. About three weeks later, Mr. Hopkins complained to Ravelo again, reporting that Engel's conduct was escalating. Ravelo again told him CBRE would address it.

67. Upon information and belief, CBRE did not discipline, remove, or restrict Engel, and Engel remained General Manager of Property Management at the Philadelphia Property.

**G. Defendants Remove Mr. Hopkins from the Account**

68. On or about Friday, December 19, 2025, Harris directed Mr. Hopkins to come to the CBRE Philadelphia property for a meeting with Harris, Powell, Engel, and Lilian Warren.

69. When Mr. Hopkins arrived, Harris told him he would not attend the meeting.

70. Harris, Power, Engel, and Lilian Warren met without Mr. Hopkins for about 45 minutes.

71. After the meeting, Harris took Mr. Hopkins outside, in about 21-degree weather, and told him that GDI was removing him from the CBRE Philadelphia property effective immediately. She ordered him to report the following Monday to 1700 Market Street on a 4:30 p.m. to 12:30 a.m. shift, Monday through Friday.

72. When Mr. Hopkins asked why, Harris said, in substance, that she just did not want him there anymore and he had to go.

73. GDI had hired Mr. Hopkins for day shift, and he had never worked an evening shift for GDI. GDI gave him one weekend's notice.

74. Mr. Hopkins told Harris that the transfer was retaliation for his complaints to GDI and CBRE. Harris denied it.

75. Upon information and belief, Engel requested or demanded Mr. Hopkins's removal at the December 19 meeting, and GDI acceded.

76. The transfer came after Mr. Hopkins's complaints to GDI, CBRE's investigation, and his second complaint to Ravelo.

77. The transfer stripped Mr. Hopkins of the account he managed, moved him to an overnight schedule, and upended his daily life. It would dissuade a reasonable worker from complaining about racial harassment.

78. Defendants kept the harasser in place and removed the Black manager who complained about him.

**H.Mr. Hopkins Is Constructively Discharged**

79. On January 2, 2026, Mr. Hopkins emailed his resignation to Harris.

80. Mr. Hopkins resigned because of Engel's repeated racial slurs and threats, the spitting incident, GDI's refusal to act on his complaints, GDI leadership's statements that Engel was untouchable, and the retaliatory transfer and shift change.

81. These conditions were so intolerable that a reasonable person in Mr. Hopkins's position would have felt compelled to resign. His resignation was a constructive discharge.

**I. Damages**

82. As a direct result of Defendants' conduct, Mr. Hopkins has lost wages and benefits and has suffered emotional distress, humiliation, anxiety, and harm to his reputation and well-being. He has sought mental health treatment for that distress.

83. Defendants acted with malice or reckless indifference to Mr. Hopkins's federally protected rights. GDI's President knew Engel had called Black employees "nigger" and told Mr. Hopkins not to take it personally. Defendants' conduct warrants punitive damages.

## VI. CAUSES OF ACTION

### COUNT I
### Title VII — Racially Hostile Work Environment and Constructive Discharge
### (Against All Defendants)

84. Mr. Hopkins incorporates all preceding paragraphs.

85. Mr. Hopkins is Black and belongs to a protected class.

86. Engel subjected Mr. Hopkins to intentional discrimination because of his race. The slurs Engel used — "nigger," "boy," "porch monkey," and "cushi" — are explicitly racial.

87. The harassment was severe and pervasive. It included repeated racial slurs over roughly eight months, threats to remove Mr. Hopkins, and an attempt to spit on him.

88. The harassment detrimentally affected Mr. Hopkins and would detrimentally affect a reasonable Black person in his position.

89. CBRE is liable because Engel, its General Manager of Property Management, exercised supervisory authority over Mr. Hopkins's daily work. Alternatively, CBRE knew of the harassment through Mr. Hopkins's complaints and its own investigation, and failed to take prompt and appropriate remedial action.

90. GDI is liable because it knew of Engel's harassment through Mr. Hopkins's repeated complaints and the July 28, 2025 meeting, and failed to take prompt and appropriate corrective action within its control.

91. The harassment culminated in Mr. Hopkins's constructive discharge on January 2, 2026.

92. Defendants' conduct violated 42 U.S.C. § 2000e-2(a) and caused the damages described above.

## COUNT II
## Title VII — Retaliation
## (Against All Defendants)

93. Mr. Hopkins incorporates all preceding paragraphs.

94. Mr. Hopkins engaged in protected activity when he opposed Engel's racial harassment, complained to GDI managers and executives, raised the harassment at the July 28, 2025 meeting, and complained to and participated in CBRE's investigation.

95. Defendants knew of Mr. Hopkins's protected activity.

96. Defendants took materially adverse actions against Mr. Hopkins, including escalating harassment after the July 28 meeting, Engel's threats to "get rid of" him, his removal from the CBRE Philadelphia property, his transfer from day shift to evening shift, and his constructive discharge.

97. A causal connection links the protected activity and the adverse actions. Engel escalated his harassment after the July 28 meeting and threatened to remove Mr. Hopkins; GDI excluded Mr. Hopkins from a meeting with Engel and removed him immediately afterward; and the transfer followed CBRE's investigation and Mr. Hopkins's second complaint.

98. CBRE caused or participated in the retaliation through Engel's threats and, upon information and belief, Engel's request that GDI remove Mr. Hopkins.

99. Defendants' conduct violated 42 U.S.C. § 2000e-3(a) and caused the damages described above.

## COUNT III
## 42 U.S.C. § 1981 — Racial Discrimination and Harassment and Constructive Discharge
## (Against All Defendants)

100. Mr. Hopkins incorporates all preceding paragraphs.

101. Section 1981 guarantees all persons the same right to make and enforce contracts as white citizens, including the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C. § 1981(a)–(b).

102. Mr. Hopkins had a contractual employment relationship with GDI.

103. Defendants intentionally discriminated against Mr. Hopkins because of his race in the terms and conditions of that relationship by subjecting him to, and acquiescing in, a racially hostile work environment that culminated in his constructive discharge.

104. CBRE is liable as Mr. Hopkins's joint employer and, independently, because CBRE, through Engel, intentionally interfered with Mr. Hopkins's contractual relationship with GDI because of his race.

105. But for Mr. Hopkins's race, Defendants would not have subjected him to this treatment.

106. Defendants' conduct violated 42 U.S.C. § 1981 and caused the damages described above.

**COUNT IV**
**42 U.S.C. § 1981 — Retaliation, Discrimination and Hostile Work Environment**
**(Against All Defendants)**

107. Mr. Hopkins incorporates all preceding paragraphs.

108. Mr. Hopkins engaged in protected activity under Section 1981 when he opposed and complained about race discrimination against himself and his Black staff.

109. Defendants knew of that protected activity.

110. Because of that protected activity, Defendants escalated the harassment, threatened to remove Mr. Hopkins, removed him from the CBRE Philadelphia Property, moved him to evening shift, and constructively discharged him.

111. But for Mr. Hopkins's protected activity, Defendants would not have taken those actions.

112. Defendants' conduct violated 42 U.S.C. § 1981 and caused the damages described above.

## RESERVATION OF PENNSYLVANIA HUMAN RELATIONS ACT CLAIMS

113. Mr. Hopkins's charge was dual-filed with the Pennsylvania Human Relations Commission on or about March 23, 2026. One year will elapse from that filing on or about March 23, 2027. 43 P.S. § 962(c)(1).

114. When that period runs, Mr. Hopkins will seek leave to amend to add claims under the PHRA, 43 P.S. § 955(a), (d), and (e), including aiding-and-abetting claims. This Court will have supplemental jurisdiction over those claims under 28 U.S.C. § 1367(a).

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff David J. Hopkins respectfully requests that this Court enter judgment in his favor and against Defendants GDI Integrated Facility Services Inc. and CBRE, Inc., jointly and severally, and award:

(a) back pay, lost benefits, and other economic losses;

(b) front pay in lieu of reinstatement;

(c) compensatory damages for emotional distress, humiliation, and reputational harm;

(d) punitive damages;

(e) injunctive relief requiring Defendants to adopt and enforce policies and training to prevent, investigate, and remedy racial harassment of service-contract workers by client and property-management personnel;

(f) reasonable attorneys' fees, expert fees, and costs under 42 U.S.C. §§ 2000e-5(k) and 1988;

(g) pre-judgment and post-judgment interest; and

(h) such other relief as the Court deems just.

## VIII. JURY DEMAND

Under Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

**THE LACY EMPLOYMENT LAW FIRM, LLC**

By:

Andrew Lacy Jr., Esq.
3675 Market Street, Suite 200
Philadelphia, PA 19104
andrew.lacy@employment-labor-law.com
*Attorneys for Plaintiff David J. Hopkins*

Dated: November 5, 2026